DAVID J. VIROVEC AND MARIA D. MAGANA VIROVEC, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Virovec v. Commissioner
Docket No. 46884-86
United States Tax Court
T.C. Memo 1991-303; 1991 Tax Ct. Memo LEXIS 355; 62 T.C.M. (CCH) 70; T.C.M. (RIA) 91303; July 8, 1991, Filed *355 Decision will be entered for the respondent. John N. Moore, for the petitioners. James D. Hill, for the respondent. PETERSON, Chief Special Trial Judge. PETERSON
MEMORANDUM FINDINGS OF FACT AND OPINION This case was heard pursuant to the provisions of section 7443A(b) and Rules 180, 181, and 182. All section references are to the Internal Revenue Code as amended and in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure. Respondent determined deficiencies in petitioners' Federal income taxes and additions to tax as follows: David J. Virovec
Additions to Tax
Section
Section
Year
Deficiency
6653(a)
6659(a)
1978
$ 1,106.00
$ 55.30
$ 331.80
1979
647.00
32.35
--  Maria D. Magana Virovec
Additions to Tax
Section
Section
Year
Deficiency
6653(a)
6659(a)
1978
$ 1,431.00
$ 71.55
$ 429.30
1979
1,891.00
94.55
567.30
David J. and Maria D. Virovec
Additions to Tax
Section
Section
Section
Section
Year
Deficiency
6653(a)
6653(a)(1)
6653(a) (2)
6659(a)
1980
$ 1,792.00
$ 89.60
--   --
$   537.60
1981
4,764.00
--  $ 238.20
* 1,429.20
*356 After concessions by petitioners, the only issue remaining for decision is whether petitioners are liable for the additions to tax for negligence for the years 1978, 1979, 1980, and 1981. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and accompanying exhibits are incorporated herein by this reference. Petitioners resided in Parma, Ohio, when the petition in this case was filed. The parties have also stipulated the record in the case of . In Rybak the Court found that investments in the same master recording program present in the instant case were devoid of economic substance and were entered into solely for the income tax benefits. Accordingly, the investments were disregarded for income tax purposes. During 1981, petitioner Maria (petitioner) invested in CC Associates, a partnership formed with 14 other individuals who were her friends *357 and co-employees at Forest City Enterprises, a real estate development company. Timothy Powers (Powers) and James Prohaska (Prohaska) were primarily instrumental in organizing CC Associates (sometimes hereinafter referred to as partnership) to invest in certain master recording leases, described in detail in CC Associates, through Structured Shelters, Inc. (SSI), leased master recordings from Oxford Productions Corporation (Oxford) for a period of eight years. CC Associates also entered into a record distribution agreement with Aim Record Distribution, Inc. (Aim). CC Associates invested in seven master recording leases, entitled Playhouse Presentation of the Merry Men of Robin Hood, Players Presentation of Indian Stories, Musical Story of Kum Ba Ya, Playhouse Presentation/World Favorite Tales From the Bros. Grimm, Musical Story of the Little Town of Bethlehem, Playhouse Presentation of the Story of Santa Claus, and Playhouse Presentation of the Story of George Washington. In addition, it received a 41 percent interest in a joint venture entered into with another entity to lease a master recording entitled Playhouse Presentation *358 of Lots of Fun With Numbers. CC Associates received an appraisal for the various master recordings dated July 1, 1982, approximately seven months after CC Associates invested in the master recording leases. The appraisal stated that each master recording lease had a fair market value of $ 250,000. The appraiser did not physically inspect the master recordings that were being valued. The appraisal was based on the assumptions that the records and tapes would be manufactured from the masters only by qualified manufacturers in high regard in the record industry, and that the records would be distributed worldwide through major retail record outlets. The master recordings were primitive, of very poor quality, and were clearly substandard to records sold in the customary retail market. Because of their poor quality, it was highly unlikely that there would ever be a market for records produced from the master recordings leased by the partnership. The lease agreement with Oxford required an advance rental payment of $ 10,000 for each lease. In addition, the partnership was required to pay $ 2,500 to Aim for each lease under the distribution agreement. CC Associates paid SSI $ 46,312 *359 in cash for the master recording leases when the investment was made in December 1981, and executed promissory notes for an additional $ 46,312 due in June 1982. The partnership received the right to treat the master recordings as its property for the investment credit and claimed a value of $ 1,852,500 on its tax return. The partners of CC Associates claimed investment credits on their tax returns totalling $ 185,250. Petitioner contributed $ 2,875 in cash to the partnership and signed a note due in June 1982 for an additional $ 2,875. Based on her partnership interest, petitioner's share of the investment credit property and investment credit totalled $ 115,040 and $ 11,504, respectively. Petitioners claimed $ 4,633 of the investment credit on their tax return. The balance of the unused credit was claimed on the 1978, 1979, and 1980 tax returns. Petitioner is a secretary and has been employed for 13 years at Forest City Enterprises as Prohaska's secretary. At the time of her investment in CC Associates, petitioner had no background or knowledge of the record business. Petitioner did not consult with anyone with experience in the record industry to determine the value of *360 the master recordings prior to her investment in CC Associates. She did not examine or listen to the records leased by the partnership. Petitioner did not review any appraisals of the master recordings prior to her investment in the partnership. Petitioner discussed the economic and tax benefits of the investment with Powers and Prohaska. Petitioner's decision to invest in the partnership was based on the promised tax benefits and not on Power's and Prohaska's advice that the investment presented a good business opportunity. Powers has a degree in accounting and was employed in the accounting department at Forest City Enterprises until he became vice president of operations. Prohaska is a certified public accountant and has been employed at Forest City Enterprises since 1974, and is vice president of finance. Prohaska became aware of the master recordings from Thomas Graham and informed the other partners of the opportunity to invest in the master recordings. Neither Powers nor Prohaska had any experience in the record business and primarily relied on the representations of Mr. Graham who was a sales representative of SSI. Although Prohaska reviewed some appraisals of master *361 recordings before the partnership made its investment, he did not review the appraisals of the master recordings acquired by the partnership. No one in the partnership made any attempt to determine the quality of the master recordings. There was no investigation of Aim or Oxford by Powers or Prohaska to determine the experience and standing of these companies in the record business. They did not examine the leases or the distribution agreements concerning the master recordings and accepted all provisions without comment or negotiation. Both SSI and Mr. Graham received commissions for each of the leases entered into by CC Associates. Although both Powers and Prohaska testified that certain financial analyses were made with regard to the investment, there are no records to support this testimony. OPINION Petitioners have conceded that the investments in the master recordings had no economic substance and were made to obtain income tax benefits. They have conceded the adjustments and additions to tax set forth in the notice of deficiency, except they argue that they are not liable for the addition to tax for negligence under section 6653(a). Negligence is the lack of due care *362 or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. . Petitioners contend that they are not liable for the addition to tax for negligence because they relied on the advice of Powers and Prohaska who were their friends and co-employees. We agree that reliance on the advice of professionals may defeat a finding of negligence under certain circumstances. . See . Petitioners have the burden of proof to show that they were not negligent. . Neither Powers nor Prohaska had any known expertise in the record business. Their experience was limited to the construction business. We believe they were generally familiar with the tax benefits gained from investments in certain housing projects and other tax oriented projects. However, in the instant case they made no effort to determine whether the investment in the master recordings was economically sound *363 other than for the tax benefits. We do not believe two successful businessmen really believed it was possible to acquire a master recording lease with an alleged fair value of $ 250,000 for $ 12,500 in cash. Although Prohaska testified that he relied on the master recording appraisals, we find this difficult to believe. Prohaska did not even have an appraisal for the recordings leased by the partnership until after investments were made, but was content to rely on appraisals for other recordings. No physical examination of the master recordings was made by the appraiser, and the appraisals were based on the assumptions that records would be manufactured by a qualified manufacturer in high regard in the record industry and that there would be an effective worldwide record sales distribution system. None of these assumptions were investigated and found to be true by Powers or Prohaska, and, in fact, they did not exist except on paper. We think it is obvious that Powers and Prohaska were not too concerned about the appraisals or whether the records would be successful in the record market since the investment in the partnership was a sure winner with a 2 to 1 payback based on the *364 investment credit no matter what happened to record sales. We agree that where a taxpayer relies on experienced professionals that the addition to tax for negligence will generally not be imposed. However, in this case petitioner knew that Powers and Prohaska did not have any experience in the record business and should have known that they did not make any attempt to verify the legitimacy of the investment. Petitioner's testimony that she went over the master recording investment with Prohaska and considered the pros and cons of both the economic and tax aspects of the investment was vague and unconvincing. No evidence was presented to show any meaningful investigation or financial analysis of the master recording investment. At most, petitioner was content to rely on vague statements from other partners that an attorney for one of the partners was independently investigating the merits of the investment and "thought it was okay." Neither petitioner nor any partner of CC Associates made any attempt to independently verify the background of Oxford or Aim, or to determine the quality of the master recordings or whether there was a bona fide and viable record sales distribution *365 program. Petitioner did not bother to listen to or examine the recordings involved. Under these circumstances, we do not believe that petitioner would have invested in an unfamiliar business venture with such a cursory investigation on his part except to obtain the substantial tax benefits involved. To the extent that petitioner's investment in the partnership was based on the advice of Powers and Prohaska, it was unreasonable based on their lack of expertise in the master recording business and their general reliance on Graham who received a commission from the promoter. See . Accordingly, under the facts of this case, we find that petitioners are liable for the addition to tax for negligence under section 6653(a) for each of the years involved. Decision will be entered for the respondent. Footnotes
*. 50 percent of the statutory interest on $ 4,746.00.↩